OCT 15 2024 PM3:23
FILED - USDC - BPT - CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF THE TRACKING OF A BLACK MERCEDES-BENZ SEDAN BEARING CONNECTICUT LICENSE PLATE BL04484 | Case No. 3:24mj917 (SDV) <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Calvin DeVries, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent with the Federal Bureau of Investigation (hereinafter the "FBI") and have been since June 2021. I am currently assigned to the New Haven Field Office of the FBI, and, in particular to, the Bridgeport Safe Streets Task Force ("Task Force"), which is comprised of personnel from the FBI, Bridgeport Police Department, Norwalk Police Department, Connecticut State Police, and the Trumbull Police Department. The nature of the investigations the Task Force conducts includes investigations into firearms offenses, narcotics offenses, racketeering crimes, and violent crimes.

2. I am a graduate of the FBI Training Academy in Quantico, Virginia where I received training in diverse criminal matters, interviewing, interrogation, evidence collection, intelligence analysis, and legal matters, among other topics. Prior to joining the FBI, I was employed as a law enforcement officer with the United States Secret Service Uniformed Division from 2018-2021. During my employment with the United States Secret Service, I held the position title of Police Officer. Throughout my employment with the United States Secret Service, I conducted and assisted with investigations into traffic stops, driving offenses, assaults, thefts, and property crimes, among other topics.

3. During my time as an FBI special agent, I have participated in multiple criminal

investigations, including investigations into suspected homicides, armed robberies, narcotics trafficking, firearms trafficking, violent criminal activity, racketeering, and money laundering. My participation in these investigations has included assisting in the controlled purchase of narcotics utilizing confidential sources, participating in the execution of search and arrest warrants, conducting electronic and physical surveillance, analyzing records related to narcotics trafficking, and reviewing and analyzing cellular records and cell site information. I have assisted in investigations into organized criminal enterprises, including violent street gangs and large-scale narcotics trafficking organizations.

4.  I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7) in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I have personally participated in the investigation concerning violations of the federal laws listed herein.

5.  Based on my training and experience set forth, I am familiar with methods employed by members of violent criminal enterprises ("VCEs") and drug trafficking organizations ("DTOs") in furtherance of their illegal businesses. I am familiar with the manner and means commonly employed by narcotics traffickers, firearms traffickers, members of criminal street gangs, and members of criminal organizations to communicate and to otherwise facilitate and carry out criminal activity and avoid detection by law enforcement. I am also aware of efforts those involved in crime make to thwart or detect surveillance, both physical and electronic.

6.  I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the installation and

monitoring of a tracking device on a black Mercedes-Benz sedan with Connecticut registration BL04484, operated by DARREN EBRON (herein referred to as the "**TARGET VEHICLE**"). Connecticut registration for BL04484 returns as a registration for a 2011 black Mercedes-Benz E3504m Awd, VIN # WDDHF8HB0BA396374, registered owner DARREN EBRON of 682 Shelton Street, Bridgeport, Connecticut 06608.

7. Based on the facts set forth in this affidavit, I believe DARREN EBRON operates the **TARGET VEHICLE** in furtherance of violations of Title 21 U.S.C. § 846 (Conspiracy and Attempts to Distribute Controlled Substances); 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute, Distribution and/or Manufacture of Controlled Substances) (collectively the "Subject Offenses.") Additionally, there is probable cause to believe that installation of a tracking device on the **TARGET VEHICLE** and use of the tracking device will lead to obtaining evidence, fruits, and instrumentalities of the Subject Offenses as well as to the identification of individuals who are engaged in the commission of those, and related crimes and locations used in relation to the Subject Offenses.

8. As a result of my personal participation in this investigation, including the analysis of reports provided to me by other Special Agents, Task Force Officers, other members of the FBI, and/or members of the BPD; physical surveillance of suspected criminal activity; analysis of telephone toll information; debriefings of cooperating witnesses and sources of information; controlled purchases of narcotics; consensual recordings; and the review of other reports and documents, I am familiar with the facts and circumstances of the Subject Offenses. Unless otherwise indicated, all conversations and statements described in this affidavit are related in substance and part and, where applicable, are based on draft transcripts.

9. Since this Affidavit is being submitted for the limited purpose of securing the

installation and monitoring of a tracking device on the **TARGET VEHICLE**, I have not included each and every fact known to me concerning this investigation. I have set forth the facts that I believe are essential to establish probable cause for the requested tracking warrant. Unless otherwise specified, all times referenced in this affidavit are in Eastern Standard Time (EST).

## JURISDICTION

10. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. See 18 U.S.C. § 2711(3)(A)(i).

## FACTS AND CIRCUMSTANCES SUPPORTING PROBABLE CAUSE

### *Drug Trafficking by ROBERT REYES and his Associates.*

11. Since 2022, the Bridgeport Police Department ("BPD") Tactical Narcotics Team ("TNT") has conducted an ongoing investigation into ROBERT REYES, who is a convicted felon, and his associates for drug trafficking and the possession of illegal firearms at 295 Shelton Avenue, Bridgeport and the surrounding buildings. BPD executed multiple search warrants and made multiple arrests for these offenses and for the illegal discharge of firearms from 2022 until the present. Items seized during these searches have further indicated that REYES is a member of the Latin Kings in Bridgeport, CT. Described below are summaries of the BPD reports detailing incidents involving REYES and his associates.

12. On January 24, 2022, BPD conducted multiple controlled narcotics purchases from an individual known as "Rob" who sold drugs from a vehicle parked in the driveway of 295 Shelton Street, Bridgeport. Based on confidential informant information, physical surveillance of hand-to-hand transactions, and controlled narcotics purchases, BPD detained ROBERT

4

REYES (DOB xx/xx/1989 known to me) and RAMON REYES (xx/xx/1988 known to me) in a blue 2007 Honda Civic. Law enforcement seized drug paraphernalia, two illegal firearms, 12.7 grams of suspected fentanyl, and 1.5 grams of suspected cocaine. ROBERT REYES 'wife, Shamarie Rodriguez (DOB xx/xx/1991 known to me), consented to law enforcement searching her residence at 295 Shelton Street, Bridgeport, where REYES also resides. Law enforcement seized drug paraphernalia and more than $11,000 in possible drug proceeds.

13. In January 2023, BPD TNT conducted surveillance and controlled narcotics purchases from a parked vehicle in the driveway of 295 Shelton Street, Bridgeport and from an enclosed porch at 295 Shelton Street, where the confidential informant observed ROBERT REYES and Shamarie Rodriguez. On January 19, 2023, BPD conducted a search warrant at 295 Shelton Street, Bridgeport. Three individuals were detained on the front porch: Norberto Maldonado (DOB xx/xx/1956 known to me), Orlando Colon (DOB xx/xx/1989 known to me), and Ira Nieves (DOB xx/xx/1991 known to me), who had an illegal firearm. BPD attempted to make entry into the residence, and shortly after, Shamarie Rodriguez answered the door. Law enforcement entered the residence and located ROBERT REYES hiding in the basement with his juvenile daughter. In the residence, law enforcement seized $9,110 in cash, 575 grams of suspected cocaine, 215g grams of suspected heroin/fentanyl, and five firearms, all of which were accessible to a minor and convicted felons within the residence. BPD also seized numerous items indicating membership in the Latin Kings gang, including clothing, jewelry, bracelets, necklaces, flags, and documents.

14. On June 6, 2023, BPD continued surveillance on 295 Shelton Street, Bridgeport, and determined that narcotics trafficking had resumed and was linked to the commercial property across the street at 678 Noble Avenue. Law enforcement conducted a controlled narcotics

purchase into 678 Noble Avenue and obtained a search warrant for the two residences (295 Shelton and 678 Noble Ave). Upon execution of the search warrants, law enforcement arrested David Tosado (DOB xx/xx/1988 known to me) with a firearm.

15. BPD detained ROBERT REYES and Shamarie Rodriguez outside of 295 Shelton Street. Law enforcement seized approximately 607grams of suspected cocaine, and approximately 604 grams of suspected fentanyl, four firearms, and $2,650 in cash.

16. On September 15, 2023 BPD responded to a ShotSpotter detection in the area of 678 Noble Avenue, and a bystander observed multiple males on the roof of 678 Noble Avenue with possible firearms. Law enforcement, too, observed males on the roof of the property, and responding officers called Bridgeport Emergency Services Unit ("ESU") to make entry under exigent circumstances. ESU arrested four individuals, and the residence was held for a search warrant. The individuals were Angel Santo Echevarria (DOB xx/xx/1995 known to me), Victor Larrea (xx/xx/1980 known to me), Ira Quentin Nieves (DOB xx/xx/1991 known to me), and Joseph Anthony Sierzant (DOB xx/xx/1997 known to me). While being held, law enforcement recovered approximately 14.3 grams of crack-cocaine from the person of Larrea and a small amount of cocaine from Nieves. Law enforcement obtained a search warrant for 678 Noble Avenue and seized approximately 31 grams of crack cocaine, 5g of heroin/fentanyl, and (3) firearms.

17. ROBERT REYES was convicted and received 5 years jail for: possession with intent to distribute a narcotics substance, stealing a firearm, criminal possession of a firearm on January 19, 2023. REYES was also convicted and sentenced 5 years jail, served consecutively, for possession with intent to distribute a narcotics substance, criminal possession of a firearm, and illegal alteration of a firearm on June 6, 2023.

### *Narcotics Trafficking around 678 Noble Avenue, Bridgeport*

18. The Federal Bureau of Investigation ("FBI") Bridgeport Safe Streets Task Force ("BSSTF") and the Connecticut State Police ("CSP") Statewide Narcotics Task Force have conducted a joint investigation into the drug trafficking and firearms possession in the area of 678 Noble Avenue and 284 Shelton Street. Since the arrest and probation of ROBERT REYES, the residence of 295 Shelton Street has been vacated by REYES and his associates, however 678 Noble Avenue remains a hub for drug trafficking.

19. In March and April of 2024, the FBI BSSTF conducted three controlled narcotics purchases with a reliable Confidential Human Source ("CHS") deployed with government funds and audio/video consensual monitoring devices and under the surveillance of law enforcement. At law enforcement's direction, the CHS purchased approximately 127 folds of presumptive heroin/fentanyl sold by LUIS PACHECO, a.k.a. "Flaco." PACHECO is a street level drug distributor that operates in an open-air market in the area of what would be 284 Shelton Street, which is partially enclosed by a wood fence and the brick wall of 294 Shelton Street. PACHECO dealers either sell from this partially concealed area or from within a vehicle parked in front of 284 Shelton Street. 294 Shelton Street is adjacent to 284 Shelton Street and appears to be an unused vehicle maintenance garage. Adjacent to 294 Shelton Street is a white door which leads to the upstairs apartment of 678 Noble Avenue.

20. During the controlled narcotics purchases, the CHS observed PACHECO with narcotics in his pockets or within a fanny pack, including suspected heroin folds, crack cocaine, and marijuana. On multiple occasions, the CHS ordered a quantity of "dope," PACHECO retreated into the Shelton Street white door entrance to 678 Noble Avenue and returned with bundles of heroin folds. Based on surveillance and my training and experience, I believe 678

7

Noble Avenue is drug and drug proceeds stash location for daily drug trafficking. Because this location has been searched by law enforcement on multiple occasions, I believe the primary stash location to be another, unidentified structure, which maintains the preponderance of the drugs and drug proceeds.

21.  In April 2024, BSSTF conducted a controlled purchase of narcotics, utilizing a CHS, from ANGEL ECHEVARRIA, brokered by LUIS PACHECO, for approximately 22 grams of suspected fentanyl powder. During the controlled purchase from ECHEVARRIA, PACHECO provided the CHS with a phone number to call to complete the purchase of "dope," and requested the CHS tip him for referring the CHS to his supplier. PACHECO said the individuals in 678 Noble Avenue did not want the CHS waiting on the street, so they sent the CHS straight to the supplier. When the CHS dialed the phone number provided by PACHECO, a male answered and identified himself as "Frenchie," and directed the CHS to go to 1590 Barnum Avenue, Bridgeport, where "Frenchie" met the CHS and sold him 22.4 grams of white powder that field tested positive for fentanyl. The CHS then returned to the area of Noble Avenue and Shelton Street and paid PACHECO $200 as a referral fee. Law enforcement identified "Frenchie" as ANGEL ECHEVARRIA based on subscriber and toll records, physical surveillance and photograph matching, and arrest reports.

### *Narcotics Trafficking by ANGEL ECHEVARRIA*

22.  In April through July of 2024, BSSTF conducted five controlled narcotics purchases from ANGEL ECHEVARRIA, brokered by LUIS PACHECO, for approximately 226 grams of suspected fentanyl powder.

23.  In early May, 2024, the CHS called ECHEVARRIA to request the purchase of narcotics. ECHEVARRIA directed the CHS to go to 1590 Barnum Avenue where he sold the

CHS approximately 27 grams of suspected powder fentanyl. Law enforcement observed ECHEVARRIA return to the area of Noble Avenue and Shelton Street after the controlled narcotics purchase.

24. In late May, 2024, the CHS called ECHEVARRIA to request the purchase of narcotics. ECHEVARRIA directed the CHS to go to 1590 Barnum Avenue where he sold the CHS approximately 45 grams of suspected powder fentanyl. Law enforcement observed ECHEVARRIA enter the first floor of 1590 Barnum Avenue immediately after the drug transaction.

25. In mid-June, 2024 the CHS called the ECHEVARRIA to request the purchase of narcotics. ECHEVARRIA directed the CHS to go to the intersection of Noble Avenue and Shelton Street. Law enforcement observed ECHEVARRIA enter the CHS' vehicle, then exit the vehicle and approach two males on all-terrain vehicles (ATVs) that arrived at the street. ECHEVARRIA then returned to the CHS' car and sold the CHS approximately 51 grams of suspected loose fentanyl powder.

26. In late June of 2024, ECHEVARRIA texted the CHS that he just got new high-quality product (the exact wording of which is known to me). A few days later, the CHS coordinated a controlled narcotics purchase of approximately 52 grams of powder fentanyl from ECHEVARRIA.

### *Identification of ECHEVARRIA's Narcotic Supplier*

27. In early August of 2024, BSSTF utilized the CHS to conduct a phone call to ECHEVARRIA to identify a new source of supply. ECHEVARRIA advised the CHS about a black male being his main supplier.

9

28.     In early August of 2024, BSSTF conducted a controlled purchase of narcotics from ECHEVARRIA utilizing a CHS. The CHS coordinated with ECHEVARRIA the purchase of 50 grams of fentanyl. ECHEVARRIA directed the CHS to go to Pearl Street, Bridgeport, Connecticut to complete the purchase. During the controlled buy, law enforcement observed ECHEVARRIA accompanied by an unknown black male. The unknown black male was observed handing a bag to ECHEVARRIA, who then provided it to the CHS. This was determined to be the bag the CHS received with the 50 grams of presumed fentanyl inside. During the meeting, the unknown black male identified himself as "D" and provided the phone number 203-953-9257.

29.     During the controlled buy, the CHS inquired about acquiring another 50 grams of fentanyl, and "D" advised it would take him about 45 minutes to an hour to get it. Law enforcement then witnessed the unknown black male enter the driver seat of a blue Subaru parked on Pearl Street, identified as Connecticut registration BC72321, and drive away from the area.

30.     A DMV query of Connecticut license plate BC72321 revealed it as a misuse suspended license plate for a black 2004 Chevrolet Monte Carlo LS, VIN #2G1WW12E349132813, registered to a DARREN EBRON, date of birth xx/xx/1992 (known to me), license number 228771525, address 682 Shelton Street, Bridgeport, Connecticut.

31.     Near the end of September of 2024, BSSTF conducted a controlled purchase of narcotics from EBRON utilizing a CHS. The CHS was directed by EBRON to go the area of Pearl Street, Bridgeport, Connecticut, to complete the purchase. The CHS, utilizing their vehicle, picked up EBRON from Pearl Street and provided EBRON with government funds for the narcotics. At the conclusion of the controlled buy, EBRON was witnessed by law enforcement

exiting the CHS's vehicle and walking down the street, with the government funds from the buy on his person. Law enforcement further witnessed EBRON enter the **TARGET VEHICLE** and then leave the area. The CHS acquired approximately 51.2 grams of a white powdery substance from EBRON, which was field tested and revealed a positive reaction for fentanyl.

32.  In the second week of October, BSSTF conducted another controlled purchase of narcotics from EBRON utilizing a CHS. Prior to the controlled purchase, law enforcement initiated surveillance on the **TARGET VEHICLE**, which was located at 682 Shelton Street, Bridgeport, Connecticut. Once the CHS made contact with EBRON, the CHS was directed to go to Stratford Avenue in Bridgeport, Connecticut to complete the purchase. Law enforcement then witnessed EBRON, operating the **TARGET VEHICLE**, leave 1995 Boston Avenue, Bridgeport, Connecticut, and return to 682 Shelton Street, Bridgeport, Connecticut. Approximately 10 minutes after returning to 682 Shelton Street, EBRON was seen exiting the residence, entering the **TARGET VEHICLE**, and he was then surveilled by law enforcement in the **TARGET VEHICLE** to the meet location with the CHS. The CHS provided governments funds to EBRON in exchange for the narcotics, and law enforcement then witnessed EBRON return to the **TARGET VEHICLE**, with the government funds, and leave the area. The CHS provided law enforcement with approximately 51.4 grams of an off-white, rock-like substance, which field tested positive for fentanyl.

## CONCLUSION

33.  Based on my training and experience, as well as the experience of other law enforcement authorities involved in this investigation, and based on the facts set forth herein, I have reason to believe, and do believe, DARREN EBRON is a source of supply of narcotics for ECHEVARRIA and his associates. I further believe EBRON has engaged, and will continue to

engage, in criminal activity in violation of the subject offenses, and that EBRON will continue to use the **TARGET VEHICLE** in furtherance of the Subject Offenses. I believe EBRON utilizes the **TARGET VEHICLE** to conduct drug trafficking away from his residence. I know based on my training and experience drug dealers will conduct drug sales away from their homes/stash locations to hinder law enforcement in their investigations.

34. It is my belief that the installation and monitoring of a tracking device on the **TARGET VEHICLE** will facilitate physical surveillance of the **TARGET VEHICLE** and their operators and occupants, and it will constitute or lead to evidence of the Subject Offenses under investigation by helping investigators to ascertain, among other things, the source(s) of supply for the narcotics EBRON and his associates are distributing, other parties involved in this ongoing drug conspiracy, stash locations, assets and drug proceeds.

## AUTHORIZATION REQUEST

35. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorizes members of the FBI or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device on the **TARGET VEHICLE** within the District of Connecticut within 10 days of the issuance of the proposed warrants, to maintain, repair, and/or replace the tracking device as necessary, and to remove the tracking device from the **TARGET VEHICLE** after the use of the tracking device has ended; to install, maintain, and remove the tracking device during both daytime and nighttime hours, and/or move the **TARGET VEHICLE** to effect the installation, repair, replacement, and removal of the tracking device; and to monitor the tracking device for a period of 45 days following the issuance of the warrants, including when the

tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the District of Connecticut.

36. In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrants delay notification of the execution of the warrant for 90 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior. Moreover, following the collection of any location information obtained from the tracking of the Target Vehicle, investigators will require additional time to investigate the various locations and engage in additional techniques such as physical surveillance, electronic surveillance and/or the introduction of an undercover officer or confidential source to develop additional evidence regarding the commission of the Subject Offenses by EBRON at those locations, and to apply for additional process, such as additional warrants. Accordingly, your affiant respectfully requests an initial period of 90 days after the end of the authorized period of tracking to continue its investigation without providing notice of this warrant.

## REQUEST TO FILE UNDER SEAL

37. I further request that this affidavit be filed under seal until further order of the Court, as the investigation is continuing, and it is my belief that, disclosure at this time could compromise the investigation and/or the safety of the cooperating sources and the law enforcement authorities conducting the investigation.

Respectfully submitted,

_____
CALVIN DEVRIES
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Subscribed and sworn to before me on this __15th__ day of October, 2024 at Bridgeport, Connecticut.

_____
HON. S. DAVE VATTI
UNITED STATES MAGISTRATE JUDGE